UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL HERNANDO ACOSTA ROA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OFFICIAL FULFILLING THE DUTIES OF FIELD OFFICE DIRECTOR, et al., <br><br> Defendants. | Case No. 25-cv-07802-RS <br><br> **TEMPORARY RESTRAINING ORDER** |

Petitioners Saul Hernando Acosta Roa, Cristian Alberto Cedeno Correa, Diana Sofia Cuadros Carreno, Geni Viviana Henao Zambrano, Yeison Fabiany Garcia Hurtatis, Yina Paola Hoyos Carvajal, Jenyffer Karina Pabon Jimenez, and Andres Felipe Restrepo Motta are individuals with pending applications for asylum, withholding of removal, and protection under the Convention Against Torture. Petitioners all appeared on September 12, 2025, for what they contend should have been routine preliminary hearings before an immigration judge. In each case, the government orally moved to dismiss, purportedly for the purpose of placing petitioners in "expedited removal" proceedings. Although the immigration judge declined to rule on the dismissal motions and gave each petitioner additional time to respond, petitioners were arrested by DHS agents upon exiting the courtroom, before they could leave the courthouse.

Petitioners have joined in a petition for habeas corpus on behalf of each of them, and seek a temporary restraining order ("TRO") against the "Official Fulfilling The Duties Of Field Office

Director,"[1] Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi. Petitioners request an order for their immediate release from custody, and enjoining respondents from transferring them out of this District or deporting them during the pendency of these proceedings. The TRO will be granted as specified below.

I.   BACKGROUND

All of the eight petitioners fled Colombia and arrived in the United States at various times in 2023. Each was apprehended by immigration officials at the border, who allegedly determined they posed little if any flight risk or danger to the community and released them into the community under 8 USC §1226a to wait for their immigration court dates. Petitioners all thereafter moved to California and applied for asylum, withholding of removal, and protection under the Convention Against Torture. Each petitioner alleges he or she has complied with all applicable ICE and immigration court obligations and has no criminal history anywhere in the world, with the exception of one petitioner, who acknowledges she was once arrested on suspicion of DUI, although she contends a blood test showed her innocence and that she was never charged.

As noted, all the petitioners were detained upon exiting the courtroom following immigration hearings. All are currently being held in custody at 630 Sansome Street, San Francisco.

This petition was filed shortly before noon on this date. Petitioners' counsel declares that immediately after the filing, he provided a copy by email to Pamela Johann, Civil Chief of the San Francisco office of the U.S. Attorney for the Northern District of California. Counsel also advised that a motion for a temporary restraining order would be filed shortly. Counsel then provided a copy of the TRO motion and supporting documents just prior to the filing.

---

[1] Because they are unsure who is currently serving as the Field Office Director, petitioners invoke the court's jurisdiction over whomever may be in that role.

In the motion, petitioner contends the arrests and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because respondents allegedly have no valid interest in detaining them) and procedurally (because they were not provided with a pre-detention bond hearing).

II.     LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

III.     DISCUSSION

As noted above, petitioners provided actual notice of their TRO application. Petitioners' counsel further advised the court that respondents indicated an intent to file opposition this afternoon. As of this time no opposition has been submitted. Given petitioners' showing and the analysis and authority below, however, entry of this order is warranted, particularly given the upcoming weekend.

Petitioners have demonstrated a likelihood of success on the merits of their claim that their ongoing detention violates their procedural due process rights under the Fifth Amendment. Petitioners have a substantial interest in remaining out of custody, and the Due Process Clause entitles them to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6 (N.D. Cal. July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).

Petitioners have also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty they face is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that petitioners' detention without a hearing is "likely unconstitutional" that they have "also carried [their] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695

F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts both inside and outside this district have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining petitioners if it ultimately demonstrates, by clear and convincing evidence, that their detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

A TRO immediately releasing petitioners is appropriate to return them to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to petitioners' likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because petitioners satisfy all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Alva v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (granting temporary

restraining order); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

IV.   ORDER

For the foregoing reasons, that petitioners' motion for a TRO is granted to preserve the status quo pending further briefing and a hearing on this matter. Respondents are ordered immediately to release petitioners from custody and are enjoined and restrained from re-detaining any of them without notice and a pre-deprivation hearing before a neutral decision maker, and from removing any of them from the United States.[2]  This Order shall remain in effect until

---

[2] Petitioners also asks the Court to order that they not be removed from the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

September 26, 2025, unless otherwise ordered.

A hearing on preliminary injunction will be heard on September 24, 2025, at 9:30 a.m. Respondents shall file papers showing cause why a preliminary injunction should not enter no later than September 17, 2025, at 5:00 p.m. Petitioners may file a reply no later than September 22, 2025, at noon.

**IT IS SO ORDERED**.

Dated: September 12, 2025

_____
RICHARD SEEBORG
Chief United States District Judge