UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL HERNANDO ACOSTA ROA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SERGIO ALBARRAN, San Francisco Field Office Director, U.S. Immigration and Customs Enforcement, et al.,<br><br>Defendants. | Case No. 25-cv-07802-RS<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

I. INTRODUCTION

Petitioners Saul Hernando Acosta Roa, Cristian Alberto Cedeno Correa, Diana Sofia Cuadros Carreno, Geni Viviana Henao Zambrano, Yeison Fabiany Garcia Hurtatis, Yina Paola Hoyos Carvajal, Jenyffer Karina Pabon Jimenez, and Andres Felipe Restrepo Motta are individuals with pending applications for asylum, withholding of removal, and protection under the Convention Against Torture. Petitioners all appeared before an immigration judge on September 12, 2025, for what they contend should have been routine preliminary hearings. In each case, the government orally moved to dismiss, purportedly for the purpose of placing petitioners in "expedited removal" proceedings. Although the immigration judge declined to rule on the dismissal motions and gave each petitioner additional time to respond, petitioners were arrested by Department of Homeland Security agents upon exiting the courtroom, before they could leave the courthouse.

1   Petitioners have joined in a petition for habeas corpus on behalf of each of them, and seek

2   a preliminary injunction against Sergio Albarran[1], Acting Director of Immigration and Customs

3   Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem,

4   and United States Attorney General Pamela Bondi. Petitioners previously obtained a temporary

5   restraining order that resulted in their release from custody.

6   As noted in another recent decision granting a TRO, there has been a "tsunami" of similar cases in this District based on the government's theory that petitioners are "applicants for admission" to the United States who are "subject to mandatory detention under 8 U.S.C. § 1225(b)." *Hinestroza v. Kaiser*, 2025 WL 2606983, at *2 (N.D. Cal. Sept. 9, 2025). As *Hinestroza* observed, however, "[t]he theory has been uniformly rejected by the courts of the District." *Id.* (citing *e.g.*, *Jimenez Garcia v. Kaiser*, 25-cv-06916-YGR (N.D. Cal. Aug. 29, 2025); *Calderon v. Kaiser*, 2025 WL 2430609 (N.D. Cal. Aug. 22, 2025); *Ramirez Clavijo v. Kaiser*, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *see also Salcedo Aceros v. Kaiser*, 2025 WL 26375031 (N.D. Cal. Sept. 12, 2025). Here, the government has presented no persuasive argument for departing from the precedents in this district that have issued TROs followed by preliminary injunctions under substantially similar facts.

## II. BACKGROUND

All of the eight petitioners fled Colombia and arrived in the United States at various times in 2023. Each was apprehended by immigration officials at the border, who allegedly determined they posed little if any flight risk or danger to the community and released them into the community under 8 USC §1226a to wait for their immigration court dates. Petitioners all

---

[1] Petitioners originally asserted their claims against "Official Fulfilling The Duties Of Field Office Director," and the other defendants, because they were unsure who was currently serving as the Field Office Director. The government has now confirmed that Sergio Albarran is automatically substituted as that defendant in this matter pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

thereafter moved to California and applied for asylum, withholding of removal, and protection under the Convention Against Torture. In the original pleading, each petitioner alleged he or she had complied with all applicable ICE and immigration court obligations and had no criminal history anywhere in the world, with the exception of petitioner Pabon Jimenez, who acknowledged she was once arrested on suspicion of DUI, although she asserted a blood test showed her innocence and that she was never charged. Counsel for petitioners subsequently submitted a document entitled "correction of record" acknowledging that petitioner Yeison Fabiany Garcia Hurtatis was convicted in April of 2024 of a misdemeanor violation of California Penal Code § 243(e)(1) - simple battery against a spouse, cohabitant, dating partner, or the parent of the accused's child.

In the motion, petitioners contend the arrests and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because respondents allegedly have no valid interest in detaining them) and procedurally (because they were not provided with a pre-detention bond hearing).

### III. LEGAL STANDARD

A party seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## IV. DISCUSSION

The detention and removal of inadmissible noncitizens is governed by multiple statutory provisions. The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on . . . conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or her release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the

government's past practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution.

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).[2]

---

[2] Here, petitioners Cristian Alberto Cedeno Correa and Geni Viviana Henao Zambrano appear likely to be able to show they have been in the United States continuously for at least two years now. The two-year mark is approaching as to other petitioners.

In summary, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2 . The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,' " that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). More recently, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January, 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the

1  alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer
2  determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of
3  his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer
4  determines there is no "credible fear," the officer "shall order the alien removed from the United
5  States without further hearing or review." § 1225(b)(1)(B)(iii). The officer's decision, however,
6  may be appealed by the applicant to an immigration judge, who must conduct the review "to the
7  maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the
8  determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of
9  credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing §
10 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained
11 pending a final determination of credible fear of persecution and, if found not to have such a fear,
12 until removed.")

13 Section 1225 also contains a provision that applies to applicants for admission not covered
14 by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to
15 statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining
16 immigration officer determines that an alien seeking admission is not clearly and beyond a doubt
17 entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full
18 removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2)
19 are not eligible for expedited removal but are subject to mandatory detention while their full
20 removal proceedings are pending. This is in contrast to the default detention regime under §
21 1226(a), which allows for discretionary release and review of detention through a bond hearing.

22 Until earlier this year, DHS applied § 1226(a) and its discretionary release and review of
23 detention to the vast majority of noncitizens allegedly in this country without valid documentation.
24 This practice was codified by regulation. The regulations implementing the Illegal Immigration
25 Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants
26 for admission, aliens who are present without having been admitted or paroled (formerly referred
27 to as aliens who entered without inspection) will be eligible for bond and bond redetermination."

62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)).

In 2025, however, DHS revised its § 1225 designation policy to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider . . . whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, DHS has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

The government's position in this case, as in many recent other cases presenting substantially similar circumstances, is that petitioners' claims fail because they are subject to mandatory detention under 8 U.S.C. § 1225(b). As courts in this district have consistently held, the government's arguments fail on at least two basic grounds. First, petitioners were released under § 1226 following determinations that their release "would not pose a danger to property or persons"

and that they were "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Accordingly, petitioners "enjoy[] a liberty interest under § 1226(a) and the procedural protections thereunder that cannot be unilaterally abrogated without process by the Government simply 'switching tracks.'" *Salcedo Aceros*, 2025 WL 2637503, at *8.

Second, even assuming the government theoretically could, without process, switch detention regimes in the middle of the stream, § 1225(b)(2) provides no legal basis for detention of petitioners. Courts have routinely rejected the government's "novel interpretation" that 1225(b) applies to noncitizens detained while present in the United States. *See Salcedo Aceros*, 2025 WL 2637503, at *8 and cases cited therein. Indeed, as noted in *Salcedo Aceros*, the government cannot point to a single district court decision agreeing with its construction of 1225(b)(2). Instead, the government relies on a BIA decision, *Matter of Jonathan Javier Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025)). The BIA opinion is not persuasive. As in *Salcedo Aceros*, the court finds "the well-reasoned decisions of the many district courts that have rejected the Government's expansive view of 1225(b)(2) far more persuasive than the new BIA ruling, a ruling at odds with its prior decisions and DHS's actions over the past thirty years." *Salcedo Aceros*, 2025 WL 2637503, at *12.

The Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is settled law that the Due Process clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Trump v. J. G. G.*, ––U.S. ––, 145 S. Ct. 1003, 1006, 221 L.Ed.2d 529 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The constitution typically "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is particularly true when the interest is in liberty, the loss of which cannot

fully be compensated after the fact.

The court joins the chorus of decisions that have concluded on facts like these that petitioners have shown a likelihood of success on the merits of their procedural due process claim that they are entitled to a pre-detention hearing before a neutral arbiter, and that the remaining factors supporting a preliminary injunction are satisfied. *See e.g., Salcedo Aceros*, 2025 WL 2637503, at *12; *Calderon v. Kaiser*, 2025 WL 2430609, at *4 (N.D. Cal. Aug. 22, 2025) (ordering pre-deprivation hearing before any detention); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *9 (N.D. Cal. Aug. 21, 2025) (same); *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (same). Because granting this preliminary injunction and enjoining the government from detaining them "obviates the threat of any imminent deprivation of [their] substantive due process rights," the court need not consider the substantive due process claims at this stage. *See Pinchi*, 2025 WL 2084921, at n.1; *accord Calderon*, 2025 WL 2430609, at n1.

## V. CONCLUSION

Petitioners' motion for a preliminary injunction is granted. The government is enjoined and restrained from (1) re-detaining any of the petitioners without a pre-deprivation hearing before a neutral decision-maker; and (2) removing any of the petitioners from the United States pending these proceedings.

**IT IS SO ORDERED**.

Dated: September 25, 2025

_____
RICHARD SEEBORG
Chief United States District Judge